THE PEOPLE, on the relation of Henry Warren Loomis and Selden M. Bronson, *v.* IRA O. WILKINSON, Judge of the Sixth Circuit.

### APPLICATION FOR A MANDAMUS.

The circuit courts have power to award a writ of *certiorari* at common law, to all inferior tribunals and jurisdictions; wherever it is shown either that they have exceeded the limits of their jurisdiction, or in cases where they have proceeded illegally, and no appeal is allowed, and no other mode of directly reviewing their proceedings is provided.

A judge of the County Court has no authority to entertain an insolvent proceeding and discharge an insolvent, except when sitting as a court. In such a proceeding, the plaintiff in the writ, or his attorney, is entitled to notice of the proceeding, so that the right to a discharge may be contested.

THE petition shows, that the petitioners had sued out a writ of *capias ad respondendum* against one Henry W. Sims, upon which the sheriff arrested him, and, at his request, took him before the county judge, at his chambers, who, upon an *ex parte* hearing, and without any notice having been given to the plaintiffs in the writ, made an order discharging Sims from the arrest. At September term, 1852, of the Ogle Circuit Court, the petitioners caused a motion in writing to be filed, asking that a writ of *certiorari facias* should be issued out of that court, directed to Spooner Ruggles, county judge of the said county of Ogle, to remove certain insolvent proceedings, upon the application of said Sims. This motion was denied by Judge WILKINSON, at March term, 1852, on the ground, among others, that the said Circuit Court had no jurisdiction to issue the writ.

On the petition, Judge WILKINSON stated, that the petition

had been submitted to him, and that its statements were substantially correct. He submitted the questions arising upon the petition to the Supreme Court for its decision and advice. This was considered a consent on the part of the circuit judge, that a peremptory mandamus might issue, if the opinion should be, that the Circuit Court had jurisdiction to issue the writ of *certiorari.*

F. Burnap, for the motion.

Caton, J. The writ of *certiorari* is familiarly known to the common law, and the Court of King's Bench has always been in the constant practice of awarding it to inferior courts and special jurisdictions, commanding them to send up their records for inspection, whenever it is shown that they have exceeded their jurisdiction, and in cases where appeal or writ of error would not lie. Holt, C. J., in Groenvelt *v.* Burwell, 1 Ld. Raymond, 471, said, " Where any court is erected by statute, a *certiorari* lies to it; so that, if they perform not their duty, the King's Bench will grant a mandamus." And again, the same court said, at page 580, " For this court will examine the proceedings of all jurisdictions erected by act of parliament. And if they, under pretence of such act, proceed to encroach jurisdiction to themselves, greater than the act warrants, this court will send a *certiorari* to them to have their proceedings returned here, to the end that this court may see that they keep themselves within their jurisdiction; and, if they exceed it, to restrain them." In this last case, justices of the peace had been authorized to levy money for the construction of a bridge, and no appeal or other mode of reviewing their action was provided; and the court reviewed their proceedings upon *certiorari;* and this writ has often been issued by courts in the United States, proceeding according to the course of the common law. In the case of Starr *v.* Trustees of Rochester, the Supreme Court of New York brought up, by *certiorari,* and reviewed the proceedings of the trustees of a town corporation, upon the widening of a street, where it was alleged that they had exceeded their jurisdiction. In that case, Savage, C. J., said, " There can be no

doubt of the power of this court, at common law, to review the proceedings of inferior jurisdictions; this power is not taken away by implication by a similar power being given to another tribunal. The common-law powers of this court, however, are confined to an examination of the jurisdiction of such inferior tribunals, and to questions of law arising out of their proceedings, and not to an examination of their decisions upon questions of fact." In that case, an excess of jurisdiction was alleged.

A similar case was that of Parks *v.* The City of Boston, 8 Pick. 218, where the court said, "The law seems to be well settled, that *certiorari* may be awarded to remove the proceedings from any inferior court, whether it be of ancient or newly-created jurisdiction, or whether it proceeds according to the course of the common law or not."

The complaint in that case was, that the city corporation had laid out and widened a street in a case where they were not authorized to do so; or, in other words, like the other, an excess of jurisdiction was alleged.

But it is unnecessary to multiply cases, upon the authority of the court to issue this writ. It is a common-law power, and is vested in our circuit courts, — which, in this State, are the highest courts of original jurisdiction, and answer to the Court of King's Bench in England, — unless it is taken away by statute. There is certainly no express statute which deprives these courts of this jurisdiction; nor is there any which takes it away by implication.

It is true we have a statute which provides for the issuing of a writ, called a *certiorari*, but that writ can scarcely be said to have any analogy to the common-law writ, of the same name. The common-law writ only removes the record of the inferior court, and upon that record alone can the questions be raised. The determinations of the questions of fact by the inferior court, are held conclusive, while our statutory writ removes the entire case into the Circuit Court, and opens for reëxamination, all questions both of law and fact. Indeed it is but another mode of taking an appeal, from the judgment of a justice of the peace, to the Circuit Court. And it can only be directed to justices of

The People et rel. Loomis et al. *v.* Williamson.

the peace, while the common-law writ, as we have seen, may be sent to all inferior tribunals and jurisdictions, whether they be courts of justice, or tribunals of special and more limited authority, and whether an appeal be allowed from their determinations or not, and the necessity for the existence of such a superintending power, all can easily appreciate, when we remember the great number of inferior special jurisdictions, which have been, and are constantly being created, which are liable to exceed their jurisdictions, and from many of whose decisions, no appeal is provided. It is true they may be liable to civil prosecutions where they exceed their jurisdiction, but this will often afford but a very imperfect redress to the injured party, while it may operate as a great hardship upon the inferior officers, who, from an error of judgment, may have stepped beyond the limits of the law conferring their authority. It may be better for all parties in such cases to have their proceedings arrested at once, and set aside by the Circuit Court. We hold then that the circuit courts, have power to award a writ of *certiorari* at common law, to all inferior tribunals and jurisdictions, wherever it is shown either that they have exceeded the limits of their jurisdiction, or in cases where they have proceeded illegally, and no appeal is allowed, and no other mode of directly reviewing their proceedings is provided.

It only remains to be seen whether the Circuit Court should have issued the writ in the present instance. Of this we have no doubt. The petition shows that the petitioners had sued out a writ of *capias ad respondendum* against one Henry W. Sims, upon which the sheriff arrested him, and at his request took him before the county judge, at his chambers, who upon an *ex parte* hearing, and without any notice whatever having been given to the plaintiffs in the writ, made an order discharging him from the arrest, professing to act under our insolvent laws, and in obedience to which order the sheriff released the alleged insolvent from custody. The proceedings before the county judge did not take place in open court, nor during a term of the court, nor were the orders the judge, nor any of the proceedings entered upon the records of the court. If all this be true there can be no doubt that the county judge exceeded his jurisdiction or

rather acted without jurisdiction. He has no authority to enter-
tain an insolvent proceeding and discharge an alleged insolvent,
except when sitting as a court. Besides the plaintiffs in the
writ or their attorneys were entitled to notice of the proceeding,
that they might appear and contest the alleged insolvency, and
oppose the discharge. The necessity of such notice although
not expressly provided for, is necessarily implied. Rev. St.
chap. 52, § 5, 6 and 7, and should be given at least, whenever
practicable as in this case. It may be true that the order made
by the judge for the discharge of Sims, was void, and did not
justify his release by the sheriff, who may be liable for an escape,
but the fact that the proceedings were void for want of jurisdic-
tion, is no reason why they may not be reversed, when the
record is brought up by a common-law writ of *certiorari.* In
almost all the cases found in the books, where this writ has been
granted, that has been the complaint. The great utility of the
writ, is in its capacity to bring the proceedings of inferior tribu-
nals before the court for reversal, where they have exceeded their
jurisdictions within which it is the proper province of the Circuit
Court, to restrain them. A peremptory writ of mandamus
must be awarded, as the statement of the judge attached to this
petition, showing that it is substantially correct, and submitting
the questions thereon, arising for the advice and decision of this
court, may be regarded and taken as a return to an alternative
writ.

　　The writ is awarded without costs.

*Peremptory mandamus awarded.*