(No. 47320.—

LOUIS A. GRAVELLE *et al.*, Appellees, v. MERRILL P. GATES, Superintendent of Educational Service Region, Du Page County, *et al.*, Appellants.

*Opinion filed January 20, 1976.*

Thomas C. Kelleghan, of Wheaton, for appellant Merrill P. Gates.

Sidley & Austin, of Chicago (James W. Kissel and Cassandra G. Sasso, of counsel), for appellants Downers Grove Elementary School District 58 *et al.*

Reid, Ochsenschlager, Murphy and Hupp, of Aurora (William C. Murphy and Timothy J. Reuland, of counsel), for appellants Hinsdale Township High School District 86 *et al.*

Fawell, James and Brooks, of Naperville (Harris W. Fawell, of counsel), for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

On January 13, 1972, pursuant to section 11—6 of the School Code (Ill. Rev. Stat. 1971, ch. 122, par. 11—6), a petition for the organization of a community unit school district was filed with Merrill P. Gates, Superintendent of Educational Service Region, Du Page County (hereafter

Superintendent). In 19 hearing sessions in which existing school districts and certain individuals participated as objectors to the petition, the Superintendent heard the testimony of 52 witnesses and received into evidence a number of exhibits. On March 2, 1973, he entered an order denying the petition. Plaintiffs, designated by the signers of the petition as a committee of 10 to act as attorneys in fact in their behalf, filed a complaint for administrative review in the circuit court of Du Page County. (See Ill. Rev. Stat. 1971, ch. 122, par. 11—6, and ch. 110, par. 264 *et seq.*) The circuit court reversed the decision of the Superintendent on the ground that it was against the manifest weight of the evidence, held unconstitutional the provision of section 11—6 (ch. 122, par. 11—6) which required the approval of the Superintendent of Public Instruction before an election could be held, and directed the Superintendent to call an election on the proposition of the organization of the proposed school district. Pursuant to Rule 302(a) the Superintendent and the objectors to the organization of the proposed community unit school district appealed directly to this court.

The proposed school district comprises an area of approximately 8.5 square miles, is located entirely within the boundaries of the Village of Oak Brook, and includes all of the village except approximately 60 residential units, the Oak Brook Shopping Center, the industrial property on the east and west sides of York Road and the commercial property along Butterfield Road. Parts of three large high school districts, Hinsdale Township High School District 86, Downers Grove Community High School District 99 and Elmhurst Community High School District 88, whose boundaries were established long before the village of Oak Brook was incorporated in 1958, lie within the village boundaries. Parts of three elementary school districts, Hinsdale 181, Downers Grove 58, and Elmhurst 46, lie within the boundaries of the village and the proposed community unit district. All of Oak Brook

Elementary School District 53 lies within the village and except for an unoccupied 80-acre tract is included within the proposed district. District 53 appeared in support of the petition.

On appeal no issue is made of the sufficiency of the petition. The Superintendent and the objectors contend that the decision of the Superintendent finds ample support in the record and that, in holding that it was against the manifest weight of the evidence, the circuit court erred. Also briefed and argued are the questions of the constitutionality of a part of section 11—6 of the School Code and the correctness of the circuit court's order denying a petition for change of venue filed by certain of the objectors.

The transcript of the proceedings held before the Superintendent contains in excess of 2600 pages. There is no question that the assessed valuation per pupil in the proposed district would be one of the highest in the State. Concerning the remaining issues, particularly the effect on existing districts of the organization of the proposed district, the quality of the educational programs which can be provided in a district of the size of the proposed district, the best interests of the schools in the area and the educational welfare of the pupils, the testimony is described, with accuracy, as "conflicting." The testimony is in sharp conflict concerning the optimum enrollment for a high school, and the advantages and disadvantages of a high school the size of that which would be operated in the proposed district and the high schools that are operated in the Hinsdale, Downers Grove and Elmhurst districts.

The legislation providing for the organization of community unit districts was first enacted in 1947 (Laws of 1947, at 1530; Ill. Rev. Stat. 1947, ch. 122, pars. 8—9 through 8—14) and has been amended at almost every subsequent session of the General Assembly. (See Laws of 1949, at 1392; Laws of 1949, at 1446; Laws of 1951, at

277; Laws of 1951, at 602; Laws of 1953, at 275; Laws of 1955, at 1846; Laws of 1955, at 2138; Laws of 1957, at 2083; Laws of 1959, at 2053; Laws of 1961, at 1956; Laws of 1963, at 3059; Laws of 1965, at 220; Laws of 1965, at 2652; Laws of 1967, at 2771; Laws of 1967, at 3472; Laws of 1968, at 417; Laws of 1969, at 2741; Laws of 1969, at 2749; Laws of 1969, at 3023; Laws of 1970, at 505; Laws of 1971, at 1217; Laws of 1971, at 1225; Laws of 1972, at 1966; Public Act 77—2744, effective October 1, 1972; Laws of 1973, at 2204, Public Act 78—732, effective October 1, 1973.) At the time in question section 11—6 provided in pertinent part:

> "The regional superintendent shall hear evidence as to the school needs and conditions of the territory and in the area within and adjacent thereto and take into consideration the division of funds and assets which will result from the organization of the district, shall determine whether it is for the best interests of the schools of the area and the educational welfare of the pupils therein that such district be organized ***." (Ill. Rev. Stat. 1971, ch. 122, par. 11—6.)

The Superintendent found that there would be no serious educational detriment to the surrounding high school and elementary school districts if the proposed unit district were established. He further found:

> "5. That of these points of objection the ones dealing with financial detriment to neighboring districts are serious but responsive to adjustment, with nominal loss to the quality of educational programs established in the neighbor district.
>
> * * *
>
> 8. That the high school of 600-850 pupils would support a basic program but the quality factor provided by extensive offerings, advanced courses, specialization in the many curricular fields and the wide choice of on-going extra curricular activities would be impossible.
>
> 9. That to force a choice between the large high school with the above advantages and the small high school with advantages of pupil guidance, closer discipline, public relations, etc. is to exclude these latter advantages from

the large high school, which is not necessarily the case.

\* \* \*

14. That, on balance, the testimony given supports the finding that it is not in the best interests of the schools of the area and the educational welfare of the pupils (especially of the upper grades) therein that such proposed community unit district be organized and that no election be called."

In a letter advising counsel of its findings and decisions, the circuit court said:

"Since the Regional Superintendent has determined that only minimal detriments would affect the adjacent districts upon formation of the new district, and that Petitioner has otherwise proved statutory essentials such as total population, assessed value worth, compactness and contiguity, tax rates, etc., and since the number of benefits to the subject territory far outweigh the alleged detriments of a 'small' high school or similar socio-economic backgrounds of the high school students, it is the court's opinion that the Regional Superintendent's ultimate decision of denial of the petition be wholly reversed as against the manifest weight of the evidence."

The history of section 11—6 and its predecessors prior to 1973 demonstrates a legislative intent to achieve a delicate balance of decision between the regional superintendent, the Superintendent of Public Instruction, the judiciary and the electorate of the proposed district. At the time in question section 11—6 provided:

"At the hearing, any resident in the proposed district or any district affected thereby may appear in support of the petition or to object thereto. Within 14 days after the conclusion of the hearing the regional superintendent shall make a decision either approving or denying the petition. If the regional superintendent denies the petition no election shall be held or further proceedings had unless his decision is reversed upon review. If the regional superintendent approves the petition he shall submit the petition and any evidence that is pertinent to the petition to the Superintendent of Public Instruction for review. The Superintendent of Public Instruction must approve or deny the petition within 30 days. If the Superintendent

of Public Instruction denies the petition the reasons for such denial shall be communicated to appropriate groups, agencies or instrumentalities representing the petitioners and no election shall be held. If the Superintendent of Public Instruction approves the petition the regional superintendent shall call an election to be held in the manner provided in Article 9 of this Act at least 40 days after such approval for the purpose of voting for or against the proposition of establishing a community unit school district to maintain grades 1 through 12, or grades 1 through 14 as the case may be, establishing tax rates therefor, and if requested in the petition, for issuing bonds." (Ill. Rev. Stat. 1971, ch. 122, par. 11—6, as amended by Pub. Act 77—604.)

We note parenthetically that Public Act 78—732, effective October 1, 1973, demonstrates a clear intent to eliminate judicial review of the decisions of the regional superintendent and the Superintendent of Public Instruction. As in force and effect at the time of these proceedings, the statute vested the regional superintendent with the initial discretionary determination whether the organization of a community unit district was "for the best interests of the schools of the area and the educational welfare of the pupils therein." The standard for judicial review of that decision, as stated in *Fenyes v. State Employees' Retirement System,* 17 Ill.2d 106, 111, is: "Under the Administrative Review Act, the findings of the administrative agency on questions of fact are *prima facie* correct. They may be reviewed to determine if they are supported by the evidence, but they can be set aside only if against the manifest weight of the evidence."

We do not agree with the circuit court that the decision of the Superintendent was against the manifest weight of the evidence. The effect of the circuit court's decision is to hold that since "only minimal detriments would affect the adjacent districts," the electorate of the proposed district, alone, should determine whether the new district should be organized. Clearly, this is not the correct standard for review of the Superintendent's deci-

sion. We hold that the Superintendent's decision was not contrary to the manifest weight of the evidence, and the judgment of the circuit court is reversed.

In view of the conclusion reached, we find it unnecessary to decide the remaining issues raised by the parties.

*Judgment reversed.*