LEE THOMPSON *et al.*, Plaintiffs-Appellants, *v.* JOSEPH M. CRONIN, State Superintendent of Education, *et al.*, Defendants-Appellees.—(JOLIET TOWNSHIP HIGH SCHOOL DISTRICT NO. 203 *et al.*, Intervening Respondents-Appellees.)

Third District   No. 76-164

Opinion filed May 12, 1977.—Rehearing denied June 8, 1977.

N. E. Hutson, of Monticello, William R. Penn, of Joliet, and Samuel Saxon, of Plainfield, for appellant Lee Thompson *et al.*

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellee Joseph M. Cronin.

Richard Buck, of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, for appellee Joliet Township High School District No. 203.

Wayne R. Johnson, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellee Troy Community Consolidated School District No. 30-C.

Gerard E. Dempsey, of Klein, Thorpe, Kasson & Jenkins, of Chicago, for *amici curiae* Joseph Perry *et al.*

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Grundy County which dismissed a complaint filed by the plaintiffs-appellants (hereinafter referred to as the plaintiffs) which sought the issuance of a writ of certiorari for the purpose of reviewing a ruling made by Joseph M. Cronin, State Superintendent of Education of the State of Illinois (hereinafter referred to as the defendant), the effect of which was to set aside an order of the Regional Superintendent of Educational Service Region, Grundy County, which had granted the prayer of the plaintiffs' petition to organize a community unit school district. During the oral argument of this appeal the intervening respondents, Joliet Township High School District No. 204 and Troy Community Unit School District No. 30-C (hereinafter referred to as the respondents), were present by

their counsel and this court further had the benefit of an amicus curiae brief and argument of certain parties who were designated as a committee of 10 to represent as attorney-in-fact all petitioners and certain interested school districts not a party to the litigation.

In order to determine the issues presented for review in this appeal it is necessary to set forth in some detail the factual background and procedural aspects of this litigation.

On November 22, 1972, a petition was filed by 273 residents and legal voters in the office of the Regional Superintendent of Educational Service Region, Grundy County, and said petition prayed for the organization of a community unit school district pursuant to the provisions of section 11—6 of the School Code (Ill. Rev. Stat. 1971, ch. 122, par. 11—6). On December 8, 1972, and prior to any action on the petition, Joliet Township High School District No. 204 and Troy Community Consolidated School District No. 30-C filed a declaratory judgment and injunction proceedings in the circuit court of Will County in which it was alleged that certain portions of section 11—6 (Ill. Rev. Stat. 1971, ch. 122, par. 11—6) were unconstitutional and that the proceedings to create a community unit district instituted by the plaintiffs should be enjoined.

On March 23, 1973, the circuit court of Will County found that certain portions of section 11—6 (Ill. Rev. Stat. 1971, ch. 122, 11—6) were void and unconstitutional and ordered the issuance of a writ enjoining the plaintiffs and the Regional Superintendent of Educational Service Region, Grundy County, from proceeding upon the petition to organize a community unit school district. Subsequently the supreme court of our State vacated the judgment of the circuit court of Will County and remanded the cause for further proceedings. On October 29, 1974, the circuit court of Will County found that portion of our School Code (Ill. Rev. Stat. 1971, ch. 122, par. 11—6) which had been subject to attack to be constitutional and denied the injunctive relief which had been previously granted.

On December 11, 1974, the Regional Superintendent of the Education Service Region, Grundy County, commenced a hearing on the petition filed on November 22, 1972, and which prayed for the organization of a community unit school district. The respondents Joliet Township High School District No. 204 and Troy Community Consolidated School District No. 30-C filed objections to the proceedings based upon territorial requirements, proof of the number of voters signatures, and the assessed valuation concerning the property involved.

After several hearings the Regional Superintendent of Educational Service Region, Grundy County, entered an order on June 20, 1975, granting the prayer of the petition requesting that an election be called for

the purpose of voting for or against the establishment of a community unit school district.

The Superintendent of Educational Service Region, Grundy County, sent the entire record of the hearing which he had held on the petition to the defendant Joseph M. Cronin, State Superintendent of Education, for review of the same. On July 23, 1975, the defendant Cronin denied the petition for the organization of a community unit school district.

On August 14, 1975, Lee Thompson and others, the plaintiffs, filed a petition for writ of certiorari against the defendant Cronin and the Regional Superintendent of Educational Service Region, Grundy County. The writ of certiorari was sought for the purpose of permitting the circuit court of Grundy County to review and determine the validity of the order of the defendant Cronin which denied the plaintiffs' petition to organize a community unit school district. The plaintiffs alleged that the defendant Cronin wrongfully abused his authority in denying their petition and that he was without jurisdiction to do so. The plaintiffs further prayed that a writ of mandamus be directed to the Regional Superintendent of Educational Service, Grundy County, commanding him to proceed with the calling of an election upon the proposition of establishing a community unit school district.

After various pleadings were filed by all parties the circuit court of Grundy County on January 29, 1976, dismissed the petition of the plaintiffs which sought the issuance of a writ of certiorari and a writ of mandamus.

A further recital of the facts and procedural aspects of this case will be set forth as they become pertinent to the issues raised in this appeal.

We first direct our attention to the question as to whether the defendant Cronin as State Superintendent of Education has jurisdiction to deny a petition to organize a community unit school district.

Prior to the adoption of our present State constitution we had an elected State officer known as the Superintendent of Public Instruction. It is undisputed that pursuant to section 11—6 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 11—6), this official possessed the authority to deny a petition to organize a community unit school district; however, the office of Superintendent of Public Instruction was eliminated by our State Constitution of 1970. In lieu of this official the Constitution of 1970 provides for a State Board of Education (presently comprised of 17 members from throughout the State) and this board is specifically empowered and directed to appoint a chief State educational officer. (See Ill. Const. 1970, art. X, § 2(a)(b).) This official known as the State Superintendent of Education was to assume office upon the existence of a vacancy in the office of Superintendent of Public Instruction but no later

than at the end of this latter official's term which was January 13, 1975. (See Ill. Const. 1970, Transition Schedule, § 7.) Our General Assembly provided for the implementation of these constitutional provisions. (See Ill. Rev. Stat. 1973, ch. 122, pars. 1A-3 and 1A-4(B).) The General Assembly provided:

"The duties of the State Board of Education shall encompass all duties currently delegated to the office of Superintendent of Public Instruction and such other duties as the General Assembly shall designate. * * *" (Ill. Rev. Stat. 1973, ch. 122, par. 1A-4(C).)

The General Assembly further provided that:

"B. The Board shall determine the qualifications of and appoint a chief education officer to be known as the State Superintendent of Education who shall serve at the pleasure of the Board except that no contract issued for the employment of the State Superintendent of Education shall be for a term longer than 3 years. The State Superintendent of Education shall not serve as a member of the State Board of Education. The Board shall set the compensation of the chief school officer and establish his duties, powers and responsibilities." Ill. Rev. Stat. 1973, ch. 122, par. 1A-4(B).

It is clearly evident that the framers of our Constitution of 1970 did not envision that the State Board of Education would be performing the day-to-day duties of directing the educational system in the State of Illinois. Had this been the intent of the delegates to the constitutional convention then there would have been no need for the provision providing for the appointment of a chief educational officer. A 17-member board would be too unwieldy to administer the daily problems in the education system of our State, hence provision was made by the Constitution of 1970 which was implemented by legislative enactment to provide for the appointment of a State Superintendent of Education who would perform the duties and fulfill the tasks that had previously been the responsibilities of the elective office of Superintendent of Public Instruction.

On January 18, 1975, the State Board of Education entered into an agreement with the defendant Cronin which contained the following pertinent provisions:

"Whereas, the laws of the State of Illinois provide that the board shall set the compensation of the State Superintendent of Education and establish his duties, powers and responsibilities; * * *

* * *

The services to be performed by the superintendent *shall be such services as designated by the laws of the State of Illinois* and such other and additional services as the Board may from time to time prescribe. The Superintendent shall carry out all of the policies and

directives of the Board. The services to be performed by the Superintendent shall include, but not be limited to:

(a) *Administering* the policies, programs, regulations, and guidelines of the State Board of Education, the State Education Code, and all *relevant state* and federal legislation." (Emphasis added.)

■■ After examining the language contained in the agreement it is abundantly clear that the Board delegated to the defendant Cronin the requisite power and duty to approve or disapprove the organization of a community unit school district pursuant to the legislative provisions as contained in section 11—6(e)(1) of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 11—6(e)(1)).

The second issue presented for review is whether a decision of the State Superintendent of Education approving or denying a petition to organize a community unit school district is subject to judicial review.

■■ The plaintiffs in the instant case attempt to review the decision of the defendant Cronin which denied the petition to organize a community unit school district by having the trial court issue a writ of certiorari. We are cognizant of the general rule of law that a common law writ of certiorari is available to review the actions of an inferior tribunal when no other mode of appeal or review is provided; however, there is an established exception to this general rule which is that no review by writ of certiorari shall be available if the statute under which the inferior tribunal proceeded specifically denies review. See *People ex rel. Loomis v. Wilkinson* (1852), 13 Ill. 660; also *Comrs. of Mason & Tazewell Special Drainage District v. Griffin* (1890), 134 Ill. 330, 25 N.E. 995.

In the case before us section 11—6 of the School Code was amended effective October 1, 1973, to provide that the decision of the regional superintendent or Superintendent of Public Instruction denying or approving the petition, whether made prior to or subsequent to the effective date of this Act, shall be a final decision, from which no review or appeal shall be had or taken. See Ill. Rev. Stat. 1973, ch. 122, par. 11—6(e).[1]

The effect of the 1973 amendment to our School Code which prohibits a review or appeal from a decision of the Regional Superintendent or State Superintendent which denied or approved a petition for the organization of a school district was the issue in the case of *Board of Education v. Gates* (1974), 22 Ill. App. 3d 16, 316 N.E.2d 525. In the *Addison* case a unit petition had been filed on August 10, 1972. The petition was granted by both the Regional Superintendent and the State Superintendent. Those opposing the petition sought relief by

---

[1] Illinois Revised Statutes 1973 in footnote indicates that correct citation should probably be ch. 122, par. 11—6(f).

administrative review, a writ of certiorari and also by a declaratory judgment and injunction. The reviewing court held:

"In view of the amendment of section 11—6 of the School Code which precludes review or appeal from a decision of the regional superintendent of public instruction denying or approving the petition * * *, the legislative declaration of non-reviewability now precludes us from considering plaintiffs' petition for a writ of certiorari.

Plaintiffs' suggestion that due process is violated by denying them review or appeal is not well taken. The procedures chosen for the creation of school districts and school district boundaries lie within the exclusive prerogative of the legislature (*Board of Education v. Ellis* (1974), 19 Ill. App. 3d 381, 311 N.E.2d 615, 616-617) * * *. * * * There is no constitutional right to appeal from administrative proceedings (Ill. Const. 1970, art. VI, §§ 6, 9); the right of appeal from such proceedings is not necessarily essential to due process, but is a right which may or may not be granted in a given situation as the legislature reasonably deems appropriate. (*Board of Education v. County Board of School Trustees* (1963), 28 Ill. 2d 15, 18.)" *Board of Education v. Gates*, 22 Ill. App. 3d 16, 20.

We further deem it noteworthy to call attention to the case of *Gravelle v. Gates* (1976), 62 Ill. 2d 217, 342 N.E.2d 57, wherein our supreme court made the following observation:

"We note parenthetically that Public Act 78-732, effective October 1, 1973, demonstrates a clear intent to eliminate judicial review of the decisions of the regional superintendent and the Superintendent of Public Instruction. * * * "

In view of the pronouncements we have set forth and which were made by courts of review of our state it is our opinion that in the instant case the trial court properly ruled that a writ of certiorari was not available to review the decision of the defendant Cronin under section 11—6 of our School Code.

The plaintiffs further contend that their petition for mandamus, to compel the Regional Superintendent to hold an election even though the State Superintendent had ruled otherwise, should not have been dismissed. We find no merit in this contention since a writ of mandamus will only issue to compel one to perform an act when that individual has a duty to perform the act which is sought to be compelled. See *People v. School Directors* (1965), 58 Ill. App. 2d 282, 208 N.E.2d 301; also *People v. Granite City* (1967), 87 Ill. App. 2d 234, 231 N.E.2d 272.

■■ In the instant case the petition to organize a community unit school district was denied by the State Superintendent. In such an event the School Code provides that no election shall be held. (See Ill. Rev. Stat.

1973, ch. 122, par. 11—6(e)(1).) It is clear that in such a situation the Regional Superintendent not only did not have a duty but in fact lacked the authority to call an election, for nowhere else in the School Code impliedly or otherwise is the power given or the duty imposed upon a Regional Superintendent to conduct an election on a petition such as we have in the case before us. The petition of the plaintiffs for a writ of mandamus was properly dismissed.

Lastly, while not framed as an issue, in the briefs of the plaintiffs and during oral argument of this case on appeal we detected overtones or indications to the effect that the defendant State Superintendent of Education summarily denied the plaintiffs' petition for a unit district or gave the records transmitted to him by the Regional Superintendent only a cursory examination. The record in this case belies such indications. The State Superintendent of Education in correspondence dated July 23, 1975, did deny the petition but set forth a number of reasons for doing so. He based his decision on matters such as tax rates, assessed valuation of property, harm to the respondent school districts, and lack of educational benefit which would result from the organization of the proposed community unit school district.

For the reasons set forth the decision of the circuit court of Grundy County is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.