V–1 OIL COMPANY, a corporation,
Plaintiff and Respondent,

v.

ANCHOR PETROLEUM COMPANY,
Defendant and Appellant.

No. 8878.

Supreme Court of Utah.

Jan. 27, 1959.

Hanson, Baldwin & Allen, Walter L. Budge, Salt Lake City, for appellant.

L. Delos Daines, Salt Lake City, for respondent.

WORTHEN, Justice.

Defendant filed a petition for an intermediate appeal from the ruling of the trial court denying defendant's motion for summary judgment.

The appellant, on the 6th day of September, 1954, entered into a contract with respondent. The contract provided in part:

"* * * Quantity: The quantity shall be all of the Buyers requirements up to a maximum quantity of 40,000 gallons per month and a minimum quantity of 20,000 per month, quantities subject to change by mutual agreement."

The contract was forwarded unsigned to the plaintiff for its signing. The letter of transmittal stated: "You may look it over, and if it meets with your understanding please sign both copies and return * * *." Prior to signing the contract plaintiff's manager talked with defendant by telephone, explaining that it could not meet the minimum requirements. Plaintiff was advised that this was of no importance. Following this conversation the plaintiff signed the contract, and returned it with a letter which stated:

"Gentlemen:

"Enclosed find contract executed which you forwarded September 1, 1954.

"It appears that we are going to be a little slow in starting, but I am sure we will use the total commitment in the next year."

The defendant signed and returned the contract to plaintiff, who received it on September 10. The plaintiff purchased no products in September. However, in October, it purchased 11,995 gallons supplied in three separate orders for 2,797 gallons, 2,617 gallons and 6,581 gallons.

On November 16, 1954, plaintiff purchased 6,546 gallons. Under date of November 17, 1954, defendant wrote plaintiff by registered mail requesting return receipt as follows:

"Gentlemen:

"Please refer to our contract with you dated August 31, 1954, effective September 1, 1954, covering the purchase by you from us of certain quantities of LP Gas.

"You are hereby notified, due to your failure since September 1, 1954, to purchase from us, in accordance with the terms of the contract, the minimum monthly quantities of LP Gas called for by the contract, the contract is hereby cancelled and terminated effective November 30, 1954."

Plaintiff received this cancellation and termination of the contract November 19, 1954. Thereafter, on November 21 and November 22 plaintiff made two additional

purchases of 6,507 gallons each. Defendant declined to supply plaintiff with petroleum after November 30, 1954.

There was correspondence on October 1, 4, 6, 12 and 20 concerning price changes on the oil without mention of the minimum gallonage requirements.

The issue is narrow indeed.

Plaintiff contends that the letter which accompanied the "accepted and agreed to" contract constituted a modification as to the minimum quantities and that the counter-eroffer was accepted by defendant and constituted the final contract of the parties.

Defendant contends that plaintiff breached the agreement and that defendant was entitled to terminate the agreement. It cannot be questioned that defendant was entitled to reject the counter-offer of plaintiff to purchase less. It is equally clear that defendant did not reject the same during the proper negotiation period, but gave every indication that the counterproposal was accepted.

Had defendant desired to make it clear that the conditional acceptance by plaintiff of defendant's offer was unacceptable it would have been a simple matter to have replied to plaintiff's letter of September 6 rejecting the same. Defendant not only failed to reject plaintiff's proposed modification but took a course calculated to lead plaintiff to conclude that the modification was accepted.

If defendant were unwilling to go along with plaintiff under the new conditions he should have so indicated. Coupled with the statement of defendant over the telephone (that the quantity was not important) the course of defendant's conduct in taking care of plaintiff's orders certainly would lead plaintiff to consider that a new contract had been consummated rather than to assume that plaintiff's rights were such only as defendant would grant.

■ Defendant had the right to reject plaintiff's counteroffer, but he likewise had the right to accept the same. If defendant wished to reject the counterproposal he should have given reasonable notice of his election to do so and having failed he cannot terminate the modified contract because of what would have been a breach of the terms of the original proposal before modified.

■ We are of the opinion that the letter, the telephone conversation and defendant's conduct, absent any further evidence, are sufficient to spell out a modified contract by which defendant agreed to go along with plaintiff.

Judgment affirmed and case remanded for further proceedings. Costs to respondent.

CROCKETT, C. J., and WADE and McDONOUGH, JJ., concur.

HENRIOD, Justice.

I dissent, believing this court should not volunteer a decision that a telephone conversation, a letter and the silence of defendant constitute an enforceable modification of a written, signed contract. First, the evidence appears to be inadmissible under the parol evidence rule. Second, it is not our function to decide matters on the merits in affirming an order denying a motion for summary judgment.

Would the main opinion conclude that there was a modified contract had there been only a telephone call? Does putting the substance of that call on paper and sending it through the mail make that which was inadmissible admissible? Haven't we departed from the parol evidence rule by concluding that such evidence effectively can vary the terms of a signed, written instrument?

The evidence presented by plaintiff, which the main opinion says creates a new contract is, in substance and effect, an assertion by plaintiff that "I agree to the terms of the contract I signed, but I intend to breach it. If you terminate the contract because of my breach, I will use that very breach to sue you for damages for terminating the contract under a provision therein allowing you to so terminate it. In the meantime, you must keep on hand enough petroleum to satisfy any order I may make for the accumulated amount of gallonage represented by the amount I did not order because of my breach."

It is difficult to understand how such a position taken could be supported by any consideration or how it could create a new contract under established principles relating to offer and acceptance. Even though we ignore such fundamentals and assume, arguendo, that there was a counteroffer, how could we find an enforceable contract here, where, through indefiniteness, it is impossible to determine whether the plaintiff agreed to take 19,999 gallons per month, or 1 gallon per month, or any other definite amount per month, and where it is impossible to determine, even, in what months the plaintiff will deign to order any gallonage or none at all.

This case is here on interlocutory appeal from an order denying a motion for summary judgment. It is not much unlike a case under the old practice where an appeal was taken from the overruling of a general demurrer. Our function in determining whether the trial court erred in denying the motion for summary judgment is to take a look at the record and if we are convinced that the facts adduced up to the time the motion was made reflect a genuine issue of fact, we simply should affirm the lower court and let a jury or a court sitting without a jury determine the facts in favor of one or the other of the litigants. In volunteering that a contract was created under the facts presented by the plaintiff, we not only invite a jury to think that the facts we mention in our de-

cision are true, but in my opinion we encourage them to accept them as true, even though they may discount the plaintiff entirely. It seems to me that a simple order affirming or reversing an order denying a motion for summary judgment, together with a simple recital of the facts, without adjudicating the case on the merits up to the time of the making of the motion, would exhaust our appellate function and in no way, even indirectly, could influence the fact finder below.

The motion should have been granted.