(No. 50923.—

DEBRA HAUGHTON, Special Administrator, Appellant,
v. JAMES HAUGHTON, Appellee.

*Opinion filed May 24, 1979.—Rehearing denied*
*September 28, 1979.*

George F. Archer and Mel Sloan, of Chicago, for appellant.

Howard T. Savage and Samuel L. Patterson, of Chicago (Howard O. Edmonds, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

On May 23, 1975, plaintiff, Hattie Ball, filed a two-count petition in the circuit court of Cook County seeking the registration and enforcement of certain foreign support orders. Count I, which was captioned "Registry of Foreign Support Order Under the Reciprocal Enforcement of Support Act" (Ill. Rev. Stat. 1975, ch. 68, par. 101 *et seq.*), sought the registration and enforcement of a 1958 New York child-support order directing defendant to pay $50 per month to the court for the children's benefit. In count II, plaintiff sought to enroll and enforce, pursuant to the Uniform Enforcement of Foreign Judgments Act (Ill. Rev. Stat. 1975, ch. 77, par. 88 *et seq.*), a 1950 California judgment which provided for monthly child-support payments by defendant of $60. The trial court granted defendant's motion to dismiss count I, but denied the motion to dismiss count II, and subsequently entered judgment thereon in favor of plaintiff in the amount of $22,816.06. The appellate court reversed (60 Ill. App. 3d 562), holding that both counts were barred by the five-year "catch-all limitation" in section 15 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 16). We allowed leave to appeal.

Twin daughters, Debra and Denene, were born to plaintiff out of wedlock on July 3, 1948. Thereafter, plaintiff, acting as guardian *ad litem* for her infant daughters, instituted a support action in the superior court of the State of California. On January 17, 1950, the California court entered a decree finding that defendant,

James Haughton, was the father of the girls and ordering him to provide support for them in the amount of $60 per month "until the further order of this court or until said plaintiffs reach their legal majority."

Shortly thereafter defendant relocated in New York and mailed a single $50 support payment to plaintiff. This was apparently the only payment made by defendant during the years 1950-1958. Pursuant to a petition filed by plaintiff in California, the domestic relations court of the city of New York entered an order for support on May 15, 1958, in accordance with the New York Uniform Support Law in the amount of $50 per month. Plaintiff testified that, in the following years, she received approximately $2,375 in child-support payments from defendant. The last payment was received on or about July 3, 1969, the date on which Debra and Denene reached their legal majority. On November 23, 1970, defendant established residence in Chicago. Plaintiff commenced the present action for enforcement of the prior support orders on May 23, 1975. While this action was pending in the appellate court, plaintiff died and Debra was appointed special administrator of plaintiff's estate for the purposes of prosecuting the cross-appeal and defending the appeal.

Plaintiff argues: (1) that application of the tolling provision in section 18 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 19) to residents, but not to nonresidents, is unconstitutional; (2) that application of the five-year "catch-all limitation" (Ill. Rev. Stat. 1975, ch. 83, par. 16) to an action brought in Illinois on a foreign judgment, while applying a 20-year statute of limitation (Ill. Rev. Stat. 1975, ch. 83, par. 24b) to an action on a domestic judgment impermissibly discriminates between foreign and domestic judgment holders and, therefore, is unconstitutional; and (3) that the trial court erred in computing the amount of plaintiff's judgment by basing it, in part, on the New York award which reduced

defendant's support payments from $60 to $50 per month.

The tolling statute at issue in this case provides:

> "If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the times herein limited, after his coming into or return to the state; and if, after the cause of action accrues, he departs from and resides out of the state, the time of his absence is no part of the time limited for the commencement of the action. *But the foregoing provisions of this section shall not apply to any case, when, at the time the cause of action accrued, neither the party against nor in favor of whom the same accrued were or are residents of this state.* \*\*\*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 83, par. 19.)

Assuming that the five-year limitation (Ill. Rev. Stat. 1975, ch. 83, par. 16) is applicable to an action brought under the Revised Uniform Reciprocal Enforcement of Support Act (Ill. Rev. Stat. 1977, ch. 40, par. 1201 *et seq.*) to register a foreign judgment, the plaintiff's cause of action clearly would be barred in the absence of an applicable tolling provision. Because plaintiff had a money judgment payable in periodic installments, the statute of limitations began to run on each installment as it became due. (*Light v. Light* (1957), 12 Ill. 2d 502, 506; *Schuler v. Schuler* (1904), 209 Ill. 522, 527.) Since the last support payment was due sometime in July of 1969, a five-year statute of limitations would have barred this action, which was not filed until May of 1975, unless the running of the statute was tolled during defendant's absence from Illinois.

We conclude that the portion of the section 18 tolling provision (Ill. Rev. Stat. 1975, ch. 83, par. 19) which limits its application to Illinois residents is violative of the equal protection clauses of both the Federal (U.S. Const., amend. XIV) and State (Ill. Const. 1970, art. I, sec. 2) constitutions and, therefore, cannot stand. That provision creates an impermissible distinction based upon whether or

not one of the parties to the action was an Illinois resident at the time the cause of action accrued. We can discern no legitimate State interest which is served by that classification nor any other rational basis for it, and none has been suggested by defendant. To be sustained, a classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Stanton v. Stanton* (1975), 421 U.S. 7, 14, 43 L. Ed. 2d 688, 694, 95 S. Ct. 1373, 1377; *F. S. Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 415, 64 L. Ed. 989, 990-91, 40 S. Ct. 560, 561-62. See also *Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 511; *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 311.

The United States Supreme Court frequently has invalidated State statutes which deny certain benefits to those unable to meet specified residency requirements. For example, in *Shapiro v. Thompson* (1968), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322, the court held unconstitutional State statutory provisions which denied welfare benefits to those who had not resided in the State for at least a year. Similarly, in *Dunn v. Blumstein* (1972), 405 U.S. 330, 31 L. Ed. 2d 274, 92 S. Ct. 995, the court struck down on equal protection grounds a State law imposing a durational residency requirement on voters. Most recently, in *Memorial Hospital v. Maricopa County* (1974), 415 U.S. 250, 39 L. Ed. 2d 306, 94 S. Ct. 1076, the Supreme Court invalidated an Arizona statute which conditioned eligibility for free medical care on satisfaction of a one-year residency requirement. In each instance the court found insufficient justification for the invidious discrimination resulting from a statutory classification based upon residency.

Likewise, we think the statutory provision in question

here cannot withstand an equal protection attack. This is so regardless of the degree of scrutiny which we employ. Whether under a rational basis test or a compelling State interest test, the classification created by this tolling statute is constitutionally invalid. By its terms, the statute tolls the running of the applicable limitation period where the defendant is out of Illinois at the time a cause of action accrues. The statute of limitations begins to run only after the defendant enters this State, except in those instances where neither party was a resident when the cause of action accrued. If plaintiff had been an Illinois resident at the time this cause of action accrued, the tolling statute would have been applicable, and the statute of limitations on the foreign judgments would not have begun to run until November of 1970, when defendant established his residency in Illinois. Solely because of the fact that both parties were nonresidents at the time this cause of action accrued, the statute denies the tolling benefits accorded residents. In the absence of some rational basis for withholding those benefits because neither of the parties was an Illinois resident at the time the cause of action arose, that provision clearly contravenes the rationale of the cited cases. Moreover, if we were to uphold this statutory classification, deserving nonresident judgment holders would be denied relief in the Illinois courts simply because they failed to anticipate the judgment debtor's future movement into this State prior to termination of the otherwise applicable statute of limitations.

It follows from our holding that neither count of plaintiff's petition should have been dismissed for failure to comply with the applicable statute of limitations. Defendant first entered Illinois in November of 1970, and the statute of limitations had been tolled until that time. Consequently, plaintiff had until November of 1975 to file her petition under the five-year statute of limitations

applied by the appellate court. Since that petition was filed on May 23, 1975, the five-year statute of limitations did not bar the action.

This conclusion is not inconsistent with the earlier decisions of this court in *Light v. Light* (1957), 12 Ill. 2d 502, and *Davis v. Munie* (1908), 235 Ill. 620. Neither of those cases presented the constitutional issues with which we are faced today. In *Light,* the defendant set up the five-year statute of limitations for actions on foreign judgments (Ill. Rev. Stat. 1957, ch. 83, par. 16) as a defense to an action brought by his ex-wife in Illinois to enforce a Missouri alimony and support decree which was entered nine years earlier. This court concluded that the five-year statute of limitations was not a bar to the action since the circuit court had only registered those unpaid installments of the Missouri decree which became due within the five-year period immediately preceding the filing of the application to register. Since the circuit court order was so limited, this court had no occasion to determine the constitutionality of the tolling statute.

In *Davis,* this court held that a suit on a foreign judgment was barred if not brought within five years from the time the judgment was rendered and that the section 18 tolling provision (Ill. Rev. Stat. 1975, ch. 83, par. 19) did not apply unless one of the parties was an Illinois resident at the time the cause of action accrued. There is, however, no indication that the plaintiff challenged the constitutionality of the tolling statute or that this court considered the question. While *Davis* is precedent for the proposition that the "catch-all" five-year limitation statute applies, it is not relevant on the issue of the validity of the exception to the tolling provision.

Having concluded that the challenged portion of the section 18 tolling provision (Ill. Rev. Stat. 1975, ch. 83, par. 19) violates the equal protection clauses of the United States and Illinois constitutions, we find it unnecessary to

address the other constitutional issues raised. It is well settled that constitutional questions will not be decided unnecessarily. *Lulay v. Peoria Journal-Star, Inc.* (1966), 34 Ill. 2d 112, 116.

Plaintiff also urges that the method utilized by the trial court in computing the amount of the judgment was erroneous, a contention with which we agree. At trial, plaintiff introduced testimony by an actuary, which consisted of three alternative computations. The trial court based the $22,816.06 judgment on the third computation, which assumed a duty to pay $60 per month from January 15, 1950, through May 31, 1958, and $50 per month for the period of June 1, 1958, through July 3, 1969. Plaintiff contends that the trial court should have based the judgment on the actuary's second computation, which assumed a duty to pay $60 per month for the entire period of January 15, 1950, through July 3, 1969, and which resulted in a total principal and interest due of $25,246.75.

The essence of plaintiff's argument is that the $22,816.06 judgment was predicated upon recognition of the validity of the New York "modification" of the California decree, but that absent some showing of changed circumstances, the New York court had no authority to reduce the support payments from $60 to $50 per month. The opinion of the appellate court indicates:

> "*** petitioner sought the registration and enforcement of the California decree in the State of New York. After examining the California petition, summons, and decree, the Domestic Relations Court of the City of New York held a hearing on the matter and, on May 15, 1958, ordered respondent to pay $50 per month as support to the court." (60 Ill. App. 3d 562, 564.)

It is entirely clear, however, that the reference in the New

York order is not to the 1950 California proceedings, but rather to the petition, filed on June 13, 1956, in California initiating proceedings under the uniform act. It does not appear to us that the New York order was intended to be a "modification" of the California decree, for there is in the New York order no reference to the original California decree and, in fact, there is in this record nothing to indicate that the New York court was even aware of the 1950 California support order. It would not have been possible under the then-existing Uniform Reciprocal Enforcement of Support Act (see, *e.g.,* Ill. Rev. Stat. 1955, ch. 68, pars. 50 to 59, repealed August 28, 1969) to register in Illinois a support order from the courts of another State, and there is no indication that the situation differed in New York. While part four of the Revised Uniform Reciprocal Enforcement of Support Act (Ill. Rev. Stat. 1977, ch. 40, par. 1235 *et seq.*) now provides explicitly for "registration of foreign support orders," there was no comparable provision in the prior act. In the absence of any indication to the contrary, we conclude the New York action, if valid, was independent of the California judgment and was not intended to modify it. Accordingly, the California judgment remained unimpaired, and the trial court should have computed its award under count II on the basis of $60 per month during the minority of the children for a total of $25,246.75. In view of this conclusion we need not consider the propriety of the trial court's dismissal of count I.

Defendant also contends that the trial court erred in entering judgment for Hattie Ball, the mother of Debra and Denene, since the two daughters were the real parties in interest to the California support judgment. Defendant claims that only Debra and Denene are entitled to enforce the California support decree. When defendant raised this issue for the first time in the appellate court, both daughters petitioned that court pursuant to section 26 of

the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 26) and Supreme Court Rule 366(a) (58 Ill. 2d R. 366(a)) to be added, *ab initio,* as additional parties petitioners, appellees and cross-appellants. Their verified petition recited that all that their mother had done had been with their consent and approval. An alternative motion was also filed to appoint Debra Haughton as special administrator pursuant to section 54(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 54(2)) following the death of her mother, Hattie Ball. The appellate court appointed Debra Haughton special administrator, but denied the motion to add Debra and Denene as additional parties.

In denying the motion to add the daughters as plaintiffs we believe the appellate court erred. Section 26 of the Civil Practice Act permits new parties to be added "by order of the court, at any stage of the cause, before or after judgment, as the ends of justice may require and on terms which the court may fix" (Ill. Rev. Stat. 1977, ch. 110, par. 26), while our Rule 366(a) authorizes a reviewing court to allow new parties to be added at any stage of review (58 Ill. 2d R. 366(a)). It is undisputed that Debra and Denene are the real parties in interest in this proceeding, and their motion to be added as parties plaintiff should have been allowed.

Finally, defendant presents several related arguments, all of which are predicated upon plaintiff's uncertainty as to the precise amounts received by her from defendant. Plaintiff conceded at trial that she received $2,375 in child-support payments over the years. Defendant over-looks, however, the fact that payment or satisfaction is an affirmative defense (Ill. Rev. Stat. 1977, ch. 110, par. 43(4)) upon which he bore the burden of pleading and proof. Defendant cannot complain of plaintiff's failure to prove that which it was his responsibility to establish.

The judgment of the appellate court is accordingly reversed. The motion of Debra and Denene Haughton to

be added *ab initio* as parties plaintiff is allowed. It is further ordered and adjudged that Debra and Denene Haughton have and recover from defendant James Haughton the sum of $25,246.75 plus interest computed according to law.

*Appellate court reversed;*
*judgment here for plaintiffs.*