David Alan NUTTY, Plaintiff,

v.

The UNIVERSAL ENGINEERING CORP., Machinery, Inc., Jewish Hospital, Dr. Robert Tatkow, and Dr. Robert Lander, Defendants.

MACHINERY, INC., Third Party Plaintiff,

v.

FRANK NUTTY, INC. and Pautler Brothers Contractors, Inc., d/b/a Kinkaid Stone Co., Third Party Defendants.

The UNIVERSAL ENGINEERING CORPORATION and Machinery, Inc., Third Party Plaintiffs,

v.

Dr. Robert TATKOW, Dr. Robert Lander and Jewish Hospital, Third Party Defendants.

Civ. No. 80–3058.

United States District Court, S.D. Illinois, East St. Louis Division.

June 3, 1983.

Bruce Cook, Grey Chatham, Cook, Shevlin, Keefe & Chatham, Ltd., Belleville, Ill., for plaintiff.

Howard Boman, Dunham, Boman & Leskera, East St. Louis, Ill., for Machinery, Inc.

Richard A. Mueller, Coburn, Croft & Putzell, St. Louis, Mo., Kenneth R. Heineman, Belleville, Ill., for Universal Engineering Corp.

Donald J. Dahlmann, Walker & Williams, Belleville, Ill., for Kinkaid Stone Co.

Robert Schmieder, Wagner, Bertrand, Bauman & Schmieder, Belleville, Ill., Peter F. Spataro, Parks G. Carpenter, St. Louis, Mo., for The Jewish Hosp. of St. Louis.

Al J. Pranaitis, Hoagland, Maucker, Bernard & Almeter, Alton, Ill., for Dr. Robert C. Lander and Dr. Robert W. Tatkow.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Before the Court are the following motions: (1) Motion to Dismiss plaintiff's fifth amended complaint by defendant Jewish Hospital; (2) Motion for Summary Judgment by defendants Dr. Lander and Dr. Tatkow; and (3) Motion to Dismiss third party complaint by third party defendant Jewish Hospital. The principle basis of each of these motions is that the various complaints against the medical defendants are barred by the applicable statute of limitations.

### I.

The allegations that are relevant to these motions are as follows. On or about June 8, 1978, plaintiff, an Illinois resident, fell into and was drug into certain rock quarry equipment while working as a laborer at the Kinkaid Stone Company in Ava, Illinois. Plaintiff was rushed to a hospital in Murphysboro, Illinois, where he was placed in a stryker frame and transferred to Jewish Hospital in St. Louis, Missouri. Plaintiff alleges that while at Jewish Hospital on June 10, 1978, he sustained further injury to his spinal cord that resulted in paralysis in his legs. In short, plaintiff claims that when he arrived at Jewish Hospital his spinal cord was not damaged, but when he left it was severed. Plaintiff claims he did not know about his injury at the hospital until November 4, 1981, when plaintiff deposed defendant Dr. Lander.

Plaintiff filed the original action on March 7, 1980. On June 7, 1982, one day short of four years after his injury, Jewish Hospital and Dr. Lander and Dr. Tatkow were added as defendants. Also on June 7, 1982, Universal Engineering filed a third party complaint against the medical defendants. In sum, the relevant dates are as follows:

June 8, 1978— initial injury;

June 10, 1978— injury at Jewish Hospital;

March 7, 1980— initial action filed;

November 4, 1981— plaintiff discovers the involvement of the medical defendants; and

June 7, 1982— medical defendants added to this action.

### II.

The Court will first address the two motions attacking plaintiff's complaint. A threshold issue is whether the Court should apply the Illinois or Missouri statute of limitations.

The resolution of the choice of law issue depends on the applicability of the Illinois borrowing statute, *Ill.Rev.Stat.*, ch. 110, § 13–210, which states:

When a cause of action has arisen in a state or territory out of this state or in a foreign country and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this state.

Because the cause of action against Jewish Hospital arose in Missouri, it would appear that the borrowing statute should operate to ban plaintiff's claim. However, in *Coan v. Cessna, Aircraft*, 53 Ill.2d 526, 293 N.E.2d 588 (1973), the Illinois Supreme Court held that the borrowing statute is inapplicable where one of the parties to the action is a resident of Illinois. The court stated that

the borrowing statute, at that time codified at *Ill.Rev.Stat.*, ch. 83, § 21, must be read with § 18 of the Limitations Act which tolls the statute of limitation if the defendant is outside Illinois when the cause of action accrues. Section 18, expressly states that it is inapplicable where neither the plaintiff or the defendant were Illinois residents when the cause of action accrued. In short, non-resident plaintiffs were not entitled to the benefit of the tolling provisions of § 18. Therefore, in order for the statutory scheme to make sense, § 18 could not apply at the same time § 20 applies. For instance, an Illinois resident who sues an Illinois resident in Illinois on a cause of action that accrued in Missouri is entitled to the benefits of § 18 if the Illinois defendant leaves the state. If, however, the borrowing statute also applies to these facts, it would bar the action in Illinois at the same time § 18 is operating to toll the Illinois statute of limitations. Therefore, the court in *Coan* concluded the Illinois legislature intended the borrowing statute to be inapplicable when one of the parties is a resident of Illinois. *Id.* at 590.

Jewish Hospital argues that *Coan* does not control the choice of law issue because *Coan* was overruled in *Haughton v. Haughton*, 76 Ill.2d 439, 31 Ill.Dec. 183, 394 N.E.2d 385 (1979). In *Haughton* the court held that the portion of § 18 which limits its application to Illinois residents violated the federal and state equal protection clauses. Jewish Hospital argues vigorously that the elimination of the residence requirement in former § 18 renders the rationale in *Coan* meaningless. This argument is without merit. The Court is in substantial agreement with the decision of *Norman v. Kal*, 550 F.Supp. 736 (N.D.Ill.1982) which specifically held that *Haughton* did not overrule *Coan*. The crux of the matter is that the *Coan* decision is based on an analysis of legislative intent at the time the borrowing

statute was enacted. The fact that a portion of another statute that was relied on to discern the legislative intent is unconstitutional is of no consequence.[1] The Court is bound by the ruling of the Illinois Supreme Court in *Coan* that the borrowing statute was never intended to apply when an Illinois resident is a party to the action.[2]

Since Nutty is a resident of Illinois, the Court must apply the Illinois Statute of Limitations. In Illinois an action for medical malpractice must be commenced within two years from the date the "claimant knew, or through the use of reasonable diligence should have known ... of the existence of the injury ...," but in no event shall such action be brought more than four years after the negligence. *Ill. Rev.Stat.*, ch. 110, para. 13–212. Courts have included in the definition of the word "injury" the element of wrongful causation. Therefore, the statute starts to run when a person knows of his injury and also knows or reasonably should know that it was wrongfully caused. *Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill.Dec. 6, 11, 421 N.E.2d 869, 874 (1981).

Since the medical defendants were not added until almost four years after the injury, plaintiff's action is barred unless the two year period began to run on November 7, 1981, when he discovered that a portion of his injuries was attributable to medical malpractice. The Illinois discovery rule, however, is not quite this generous. In *Lofton v. General Motor Corp.*, 694 F.2d 514 (7th Cir.1982), the Court held that the application of the Illinois discovery rule is very different depending on the type of injury suffered. Where injury gradually manifests itself over time (i.e. asbestosis, leaky roof) the statute begins to run when the plaintiff knows of his injury and also knows or reasonably should know that it was

---

1. Of course *Haughton* is relevant to the question of whether the borrowing statute as construed by *Coan* is unconstitutional. Neither party has raised this issue, thus, the Court will not address it.

2. The Court also notes that the court in *Haughton* never mentioned the *Coan* decision. This

Court is very reluctant to extend Illinois law into new territory without clear direction from the Illinois Supreme Court. *Lamb v. Briggs Manufacturing*, 700 F.2d 1092, 1096 (7th Cir. 1983) and *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 354 (7th Cir.1982).

wrongfully caused. *See Witherell, supra.* However, in cases where the injury results from a sudden traumatic event, the statute runs from the time of the event. The *Lofton* Court reasoned that after the sudden event causing the injury a court must assume that a plaintiff knows of the injury and whether or not somebody is possibly at fault. The Court decided that after a sudden traumatic injury a plaintiff must determine within two years whether he has an actionable claim against someone. In the instant case, plaintiff was injured by a sudden traumatic event. Further, he was aware of his full injuries in June of 1978 and the possibility that others were at fault. This knowledge is sufficient to trigger the statute. *See Knox College v. Celotex Corp.,* 88 Ill.2d 407, 58 Ill.Dec. 725, 729, 430 N.E.2d 976, 980 (1982).

In *Urchel v. Holy Cross Hospital,* 82 Ill. App.3d 1050, 38 Ill.Dec. 314, 403 N.E.2d 545 (1980), the discovery rule as discussed above was applied to a factual situation remarkably similar to the instant case. Urchel was injured in an automobile accident and taken to the defendant hospital where he suffered further crippling injuries. He alleged that he did not discover the fact that he was injured in the hospital until three years later. The Court held, however, that the two year statute ran from the date he left the hospital because at that time he knew the full extent of his injury and the fact that someone else (the driver of the automobile) was potentially responsible. Once Urchel knew these two things, the court imposed on him the duty to discover if anyone else was also liable. Accordingly, the Court finds that the discovery rule as defined in *Lofton, Knox* and *Urchel* operates to bar plaintiff's claim.

### III.

The conclusion that plaintiff's claim against the medical defendants is barred, however, does not end the Court's inquiry. Plaintiff has invoked the doctrine of equitable estoppel to prevent dismissal. In short, plaintiff alleges that the medical defendants caused his back to be severed and then concealed this fact from him. Plaintiff argues that defendants should be estopped from raising the statute of limitation defense because they should not be allowed to benefit from their own wrong of concealing their conduct from him.

To invoke equitable estoppel, plaintiff must allege facts that show he reasonably relied on defendant's conduct or representation in forbearing suit. *Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067, 1071 (7th Cir.1978). In *Witherell v. Weimer, supra,* 52 Ill.Dec. at 12, 421 N.E.2d at 875, the Illinois Supreme Court, after concluding plaintiff's case was barred by the statute of limitations, evoked equitable estoppel to prevent the medical defendant from prevailing because the doctor's negligent diagnosis caused the plaintiff to neglect her cause of action. The question presented is whether plaintiff's complaint and affidavits state facts that show he failed to bring suit in reliance on defendant's conduct.

A review of the record reveals two allegations of misconduct that are relevant to the issue of estoppel. First, plaintiff claims nurses at Jewish Hospital changed plaintiff's hospital records by crossing out the note that plaintiff was "able to move all extremities" when he was admitted. (Affidavit of Bruce Cook, April 8, 1983, R. 475, 477). Second, plaintiff alleges that until the deposition of defendant Lander in November of 1981, he "was told by the personnel at Jewish Hospital and the doctors that his paralysis was the result of his accident on June 8, 1978," at the rock quarry in Ava, Illinois. (Affidavit of David Alan Nutty, April 28, 1983, R. 550, 551). The first allegation alone is insufficient to trigger equitable estoppel. Clearly, the alteration of medical records is the type of conduct the doctrine of equitable estoppel is intended to punish, however, plaintiff does not allege that he relied on the alteration in forbearing to sue. Nonetheless, plaintiff's second allegation is sufficient. In short, plaintiff is claiming the medical defendants lied to plaintiff to cover up their own negligence, and as a result plaintiff did not file suit. Defendants cannot now benefit from their misrepresentation by relying on the statute of limitations. The application of equitable

estoppel is particularly appropriate in a case such as this, where plaintiff and defendant are in a fiduciary relationship that requires a great deal of trust and confidence. *Witherell v. Weimer, supra,* 52 Ill.Dec. at 13, 421 N.E.2d at 876.

Accordingly, the Court finds that the medical defendants should be estopped by their conduct from prevailing on their statute of limitation defense. Plaintiff is entitled to an opportunity to prove the allegations of estoppel, and if successful, the allegations of medical malpractice. Therefore, the Motion to Dismiss of defendant Jewish Hospital and the Motion for Summary Judgment of the defendant doctors should be denied.

### IV.

Also before the Court is Jewish Hospital's Motion to Dismiss the third party complaint. Third party plaintiffs Universal Engineering and Machinery are allegedly liable for all of plaintiff's injuries, thus they have sued the medical defendants for contribution for aggravating plaintiff's injuries. Jewish Hospital moves to dismiss because: (1) the third party complaint is barred by the applicable statute of limitations; and (2) a defendant sued in strict product liability has no claim for relief for contribution against a co-defendant sued in negligence.

Again, the Court is faced with the question of whether to apply the Missouri or the Illinois statute of limitations. Jewish Hospital argues that pursuant to the Illinois borrowing statute, Missouri law applies and that it operates to bar the third party action.

As discussed at length above, the Illinois borrowing statute, *Ill.Rev.Stat.,* ch. 110, § 13–210 does not apply when one of the parties to the action is a resident of Illinois. This exception is irrelevant to the third party action because neither third party plaintiffs or third party defendants are residents of Illinois. However, there still exists some doubt as to the applicability of the borrowing statute, *Ill.Rev.Stat.,* ch. 110, § 13–210, because the statute compels the Court to apply the statute of limitations of a state or territory where the "cause of action has arisen." Thus, the threshold question is where did the contribution action arise for purpose of the borrowing statute.

Since third party plaintiffs' claim for relief for contribution will accrue, if at all, in the courtroom of this Court, it would appear the cause of action arises in Illinois. However, recent decisions construing the borrowing statute indicate the Court should not use this mechanical test. In *Hamilton v. General Motors Corporation,* 490 F.2d 223, 225–26 n. 1 (7th Cir.1973) and *Mitchell v. United Asbestos Corp.,* 100 Ill.App.3d 485, 55 Ill.Dec. 375, 426 N.E.2d 350, 360 (1981), the most significant relationship test was applied to determine where a cause of action arose. The Court finds that in this case Missouri has the most significant relationship with the third party action. The underlying injury to plaintiff and all the conduct that allegedly makes Jewish Hospital a joint tortfeasor occurred in Missouri. Further, the hospital is a Missouri corporation doing business exclusively in Missouri. The only relationship Illinois has to the third party action is that the underlying action is being tried in Illinois. Accordingly, the Court finds that the third party plaintiff's claim for relief for contribution arose in Missouri for purposes of the borrowing statute and therefore, the Court will borrow the Missouri statute of limitation if it operates to bar the third party action.

There are two ways to analyze a statute of limitations defense in Missouri by medical defendants against a contribution claim. First the Court could treat this action like an ordinary contribution claim and apply the rule set out in *Simon v. Kansas City Rug Co.,* 460 S.W.2d 596, 600 (Mo.1970) that the statute of limitations commences when a person has paid a judgment recovered by an injured party. Under this analysis, a court would apply the five year statute of limitations set out in § 516.120 RSMo (1978). The other alternative is to apply § 516.105 which states:

All actions against physicians, hospitals, . . . and any other entity providing health

care services ..., for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of,

....

Contribution between two "active" tortfeasors was not available in Missouri until 1978 with the case of *Missouri Pacific Railroad Co. v. Whitehead and Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978). Therefore, Missouri courts have not until recently had the opportunity to determine if the two year statute of limitations in § 516.105 applies to contribution claims.

■ The only decision which directly addresses whether § 516.105 applies to third party practice is *Rowland v. Skaggs,* WD 33485 (Mo.App. April 12, 1983). In *Rowland* the court decided that when the legislature wrote the words "all actions" into the statute, they literally meant all actions, including actions for indemnity and contribution. The *Rowland* court did not dispute that generally the statute of limitations does not begin to run in a contribution action until one of the tortfeasors pays more than his share of the liability, however, the court decided this general rule was overridden by a specific statute dealing with medical defendants. "It is clear that the Missouri legislature intended to treat actions based on negligence of health care providers in a different manner from other, more general type of actions." *Id.* at 9. The court in *Rowland* adequately distinguished Missouri Supreme Court opinions that would mandate a different result. Accordingly, the Court feels obliged to follow *Rowland* and apply § 516.-105 to this third party action.

Section 516.105 states that actions for malpractice shall be brought within two years from the date of the occurrence of the act of neglect. The act of neglect complained of occurred on June 10, 1978. The third party action by Universal Engineering was not filed until June 7, 1982 and Machinery filed its complaint on April 20, 1983. However, third party plaintiffs seek to prevent dismissal by evoking the continuing care exception to § 516.105 set out in *Thatcher v. DeTar,* 351 Mo. 603, 173 S.W.2d

760 (Mo.1943). Third party plaintiffs allege in their brief that plaintiff was under the continuing care of each of the medical defendants until December 11, 1981, and therefore, the two year statute did not commence to run until that date. A closer look at the line of cases beginning with *Thatcher,* however, reveals that third party plaintiffs have failed to allege sufficient facts to fall within the continuing care exception.

■ In *Thatcher v. DeTar, supra,* the plaintiff sued a doctor for negligently leaving a needle in her body during an operation on August 25, 1937. Plaintiff continued to be treated by the defendant until October, 1939. On August 29, 1941, plaintiff brought suit against the doctor for not only leaving the needle in the body, but also in negligently failing to discover the presence of the needle during subsequent treatment. The court held that plaintiff's action was not barred by the two year statute of limitations because plaintiff alleged continuing neglect until October of 1939. *Id.* at 761–62. By filing suit in August of 1941, plaintiff took action within two years "of the occurrence of the act of neglect." Therefore, it is insufficient for plaintiffs to merely allege they remained under a defendant doctor's care after the negligent conduct to fall within the exception. A plaintiff must allege subsequent acts of negligence to prevent the running of the statute.

The Court's reading of *Thatcher* is confirmed by subsequent cases in Missouri. In *Winchester v. Fenton,* 541 S.W.2d 572, 573 (Mo.App.1976), the court held that *Thatcher* was inapplicable where plaintiff failed to allege negligent treatment after the original injury. Furthermore, in *Shaw v. Clough,* 597 S.W.2d 212, 216–17 (Mo.App. 1980), the court also interpreted *Thatcher* to require continuing negligence and not mere treatment. In *Shaw,* however, the court concluded plaintiff's complaint and affidavits contained sufficient allegations of negligence during the continuing treatment to prevent dismissal.

■ In the instant case, third party plaintiffs have done nothing more than re-

fer to affidavits filed by plaintiff that plaintiff remained under the care of the medical defendants until late 1981. There is no hint in the record that the medical defendants were in any way negligent in their treatment of plaintiff from June 10, 1978 to December, 1981. Accordingly, the third party complaint is barred by the two year statute of limitations.

V.

Based on the above discussion, the Court makes the following findings:

(1) the motion to dismiss plaintiff's complaint filed by defendant Jewish Hospital is hereby DENIED;

(2) the Motion for Summary Judgment filed by defendants Dr. Lander and Dr. Tatkow is hereby DENIED; and

(3) the Motion to Dismiss the third party complaint filed by third party defendant Jewish Hospital is hereby GRANTED.

IT IS SO ORDERED.